Mrs. Dollie Ford **DABNEY** and husband, Ward Dabney, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 2215.

United States District Court
W. D. North Carolina,
Asheville Division.

Dec. 30, 1965.

---

Herbert L. Hyde, Asheville, N. C., for plaintiff.

William Medford, U. S. Atty., Asheville, N. C., and Hubert M. Crean and James Gaither, Civil Division, Department of Justice, Washington, D. C., and Lt. Col. William D. McCarthy, Air Force Judge, Advocate General's Department, Washington, D. C., for defendant.

CRAVEN, District Judge.

This is a suit against the United States under the Federal Tort Claims Act. The case was tried to the court without a jury on December 9, 1965.

The only question necessary for decision is whether defendant is guilty of actionable negligence. Plaintiffs have the burden of proof, and have failed to sustain that burden. Some of the crucial findings and conclusions are, therefore, phrased negatively.

On the 29th day of August, 1962, at or about 8:00 P.M., a United States Air Force jet aircraft flew near Asheville, North Carolina, followed about 15 minutes later by a similar jet aircraft. Both planes were owned by the United States and were being operated by duly authorized Air Force officers acting within the scope and course of their employment. Both planes entered a supersonic corridor beginning approximately 30 miles southeast of Asheville, and running to a point northwest of Milwaukee. The corridor is approximately 20 miles wide and passes over and within the general vicinity of Asheville, North Carolina. Both aircraft accelerated to supersonic speed prior to coming abeam of Asheville, North Carolina. Before reaching supersonic speed, both aircraft achieved an altitude of approximately 35,000 feet, and not less than 30,000 feet. Both flights were routine, and no deviation or emergency occurred during either flight. Both flights were governed by Air Force regulation 5535, which requires, with exceptions not applicable in this case, that supersonic aircraft shall not operate at speeds in excess of the speed of sound except at an altitude at or over 30,000 feet.

When aircraft attain the speed of sound, the phenomenon known to the non-expert as "sonic boom" occurs and continues at all times that the speed is greater than the speed of sound. The intensity of the phenomenon on earth is largely determined by height of the aircraft. Ten pounds pressure per square foot is the minimum pressure required (approximately) to result in damage to property. To cause such pressure on the earth, a B–58, such as these planes, would have to be flying at an altitude of about 6,000 feet. The pressure diminishes as altitude increases, and enhances as altitude diminishes. The greatest pressure occurs directly beneath the passing aircraft. These aircraft did not pass over plaintiffs' home, but some miles to the east of their home. Pressure di-

rectly beneath amounted to approximately 2.5 pounds per square foot, and at plaintiffs' residence to approximately 1.26 pounds per square foot. The pressure caused by the passage of these two aircraft at supersonic speeds would not and could not cause property damage of which plaintiffs complain.

On August 29, 1962, plaintiffs were the owners in fee simple of a parcel of land described in the complaint on which were located three dwelling houses. At about 8:00 P.M. on that evening both of the plaintiffs and a tenant by the name of Mrs. Zeb Lee heard an extremely loud sound, and Mrs. Lee saw what she described as a fire ball over the house at an undetermined altitude. Soon thereafter the plaintiff Mr. Ward Dabney noticed several plaster cracks in two bedrooms, and subsequently noticed two cracks in the foundation of his main house and a separation between a stone areaway and the foundation of the house. Subsequently, he noticed some cracks in the stucco superimposed on the concrete blocks at number 402 house. Some six months later (February 1963), plaintiff Ward Dabney also noticed cracks and ruptured wallpaper and distortion of doors and windows, buckled hardwood floors and broken waterpipe at number 400½. Number 400 was built in 1941, number 400½ was built in 1948, and number 402 in 1953.

I am not satisfied from the evidence and by its greater weight as to what caused the damage described by the plaintiffs. Defendant urges that all such damage—especially cracks—developed gradually as the buildings settled over the years and simply were not noticed by plaintiffs until the sonic boom incident occurred. It is difficult to exaggerate the power of suggestion on even the most scrupulously honest human mind. But suffice it to say that the evidence does not establish proximate cause.

Nor am I satisfied from the evidence and by its greater weight as to the cause of the phenomenon described by Mrs. Lee as a fire ball over her home. It could not have been caused by either of the defendant's aircraft unless they were flying at virtually tree-top level, and there is no evidence to support such a hypothesis.

CONCLUSIONS OF LAW

1. Both aircraft owned and operated by the United States were being operated with ordinary due care and non-negligently, and plaintiffs have failed to establish otherwise.

2. If it be assumed that defendant operated the aircraft negligently, it is not established that such negligence constituted the proximate cause or one of the proximate causes of the damage complained of.

3. The facts do not support a conclusion of actionable negligence.

After consulting with plaintiffs' counsel, counsel for defendant may submit an appropriate judgment pursuant to this Memorandum of Decision.